900 S.W.2d 753 (1995)
In the Matter of J.C.J., a Juvenile.
No. 12-94-00129-CV.
Court of Appeals of Texas, Tyler.
February 28, 1995.
Rehearing Overruled May 31, 1995.
Paul Tatum, Nacogdoches, for appellant.
Greta E. Haidinyak, Nacogdoches, for appellee.
RAMEY, Chief Justice.
The sixteen year old minor, J.C.J., appeals from the order of the juvenile court certifying him for trial as an adult for the offense of engaging in organized criminal activity, a series of burglaries of buildings. The court waived the juvenile court's original exclusive jurisdiction over J.C.J. and transferred the cause to the district court for trial in the criminal law system. Appellant assigns three points of error. We will affirm.
The first point of error asserts that the trial court erred in admitting the testimony of psychiatrist Nancy Stebbins, M.D. ("Dr. Stebbins") and the written report of her court-ordered examination of J.C.J., because the child was not properly admonished of his rights against self-incrimination preceding his examination. Dr. Stebbins performed the psychiatric assessment as part of *754 an overall evaluation of J.C.J., as directed by Tex.Fam.Code Ann. § 54.02(d) (Vernon 1986).
Dr. Stebbins testified that she did not remember precisely the admonishments given the child before commencing her examination. She did recall that she told him that the results of the testing could be used in court and that her purpose was not to treat him; she procured no waiver from him or his parents. Citing Estelle v. Smith, J.C.J. argues that a juvenile must be warned that he may remain silent during the court-ordered examination. 451 U.S. 454, 68 L.Ed.2d 359, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); also Battie v. Estelle, 655 F.2d 692 (5th Cir.1981). The record reflects that, in fact, the minor did refuse to answer any questions concerning his alleged offenses, on the advice of his counsel.
Juvenile transfer hearings are dramatically different from criminal proceedings, the context of both Smith and Battie. A.D.P. v. State, 646 S.W.2d 568 (Tex.App.Houston [1st Dist.] 1982, no pet.); Mena v. State, 633 S.W.2d 564 (Tex.App.Houston [14th Dist.] 1982, n.w.h.); K.W.M. v. State, 598 S.W.2d 660 (Tex.Civ.App.Houston [1st Dist.] 1980, n.w.h.). Judge Baird in his dissent in a recent Court of Criminal Appeals opinion develops this recognized distinction. Coffin v. State, 885 S.W.2d 140, 152-153 (Tex.Cr. App.1994). Because juvenile certification hearings are pre-trial proceedings and do not involve adjudication of the minor's guilt or innocence, no Federal or State constitutional rights against self-incrimination are presented, and Smith and Battie are not controlling. J.C.J.'s first point of error is overruled.
In his second point, the minor asserts that the juvenile court failed to require a complete diagnostic study, social evaluation and full investigation, because the diagnostic report to the court recited that it was conducted for the purpose of determining mental retardation. Section 54.02(f) of the Family Code directs that the studies relate to the child generally, his circumstances and the circumstances of the alleged offense. J.C.J.'s complaint is directed only to the study performed by the Deep East Texas Regional Mental Health Mental Retardation Services ("MHMR").
MHMR's report on this minor, dated March 23, 1994, reflects that it focused upon a "Determination of Mental Retardation" and presents as its conclusion that J.C.J. "is not found to have a diagnosis of Mental Retardation". On several occasions during the certification hearing, the juvenile court itself expressed concern about the stated emphasis of MHMR's diagnostic study.
In the waiver and transfer order, the court specifically stated that in making the transfer certification it considered each of the six statutory factors required by Section 54.02(f) of the Family Code. The order then recited that the court made findings of five specific "reasons" for its order, including the following:
(4) That the sophistication and maturity of the child, as is shown by the evidence in this case, is such that the child should be tried as an adult in the Criminal Court rather than the Juvenile Court.
Here, with no qualification, the court allowed the filing of the subject diagnostic report, received it into evidence, and affirmatively stated that he considered it. The completeness of such a diagnostic report is to be determined by the juvenile court itself. In the Matter of J.S.C., 875 S.W.2d 325, 329 (Tex.App.Corpus Christi 1994, writ dism'd by agr.); Turner v. State, 796 S.W.2d 492, 497 (Tex.App.Dallas 1990, n.w.h.). The juvenile court's ruling on the report will not be overturned absent a showing of an abuse of discretion. In the Matter of C.M., a Juvenile, 884 S.W.2d 562, 563 (Tex.App.San Antonio 1994). This court furthermore held that the juvenile court's decision to certify was not disturbed even though the experts performing the diagnostic studies recommended that the minor not be transferred to the criminal justice system.
Abundant evidence was offered at the hearing as to J.C.J. himself, his condition and circumstances. MHMR's report itself reflected a comprehensive medical and social history of the minor, a medical/psychiatric examination of J.C.J., and a battery of psychological and developmental assessments that comprehensively described his mental condition and maturity; these assessments *755 were performed by four trained investigators, the psychiatrist, a psychologist, a licensed social worker and a licensed professional counselor. Kay Hooper, the Nacogdoches County Juvenile Probation Officer, submitted a written report of her social evaluation of J.C.J., and she was a witness at the hearing. In Dr. Stebbins' testimony, she opined that the child had the maturity and sophistication of a normal sixteen year old individual, and she found no evidence of psychosis, hallucinations, delusions or inappropriate orientation; her assessment was that he did not need treatment by one in her specialty and that her diagnosis was that he had no mental or psychiatric abnormality. The fact that Dr. Stebbins' written report focused on an aspect of the minor's condition that was not directly in issuemental retardation does not disqualify it as to the facts, assessments and opinions presented to the court.[1]
We hold that, in the light of the comprehensive report and testimony by Dr. Stebbins, together with the other evidence presented, the juvenile court did not abuse its discretion in not requiring additional or re-directed diagnostic studies upon the minor by MHMR. J.C.J.'s second point of error is overruled.
By his third point of error, J.C.J. asserts that the juvenile court erred in failing to provide him a psychiatric expert as directed by De Freece v. State, 848 S.W.2d 150, 159 (Tex.Cr.App.1993). De Freece stands for the proposition that "[o]nce it is shown that insanity will be a significant factor at trial, the trial court abuses its discretion in failing to appoint ... a competent psychiatrist to assist in the evaluation, preparation and presentation of his insanity defense." Ibid at 159.
The underlying facts of De Freece are sharply distinguishable from the instant case. De Freece was a criminal trial; here, the civil hearing was to determine if the minor should be certified as an adult, and there was no adjudication of the minor's guilt or innocence. De Freece's version of the circumstances surrounding his alleged offense was that, at the time of the offense, he was overcome by internal voices commanding him to "kill, kill"; here, the psychiatric examination of J.C.J. was ordered to satisfy a statutory requirement for the transfer hearing only, Section 54.02(d), with no claim of insanity. Voluminous mental hospital records pertaining to De Freece were offered; here, J.C.J.'s only history of any psychiatric assessment whatsoever was this required examination by Dr. Stebbins.
De Freece specifically holds that if the examination by a court-appointed expert concludes that "insanity is not to be a significant factor in the case", due process rights are not triggered and no expert for the Defendant need be provided. Ibid. Here, Dr. Stebbins, the court-appointed expert, found no mental or psychiatric abnormality. J.C.J.'s third point of error is overruled.
The juvenile court's order waiving jurisdiction and transferring the case to district court is affirmed.
NOTES
[1] It should be noted that the minor has not challenged the sufficiency of the evidence offered to support the transfer certification.